Thank you, Your Honor. May it please the Court, and I apologize, I wanted to get my camera to work a little better. May it please the Court, and I would like to reserve five minutes on behalf of the Board of Trustees and as a fiduciary of its welfare benefit plan. The error that occurred below, which Cigna is trying to exploit on this appeal, most fundamentally is the error of treating the fund and the plan as one thing, as if they were the same thing. And the relevant documents, the law, everything about this case is clear that that's not true, but I want to quickly review the facts so that we don't have any question about that. The fund is something that was created under the Taft-Hartley Act by the local chapter of NECA, that's an employer group, and local 640 of IBEW, which is a union local, and they were authorized to do that and did do that, create that trust fund in 1963. And that trust has existed, that trust fund has existed continuously since 1963. It's governed by an eight-member board, and over time those trust documents that govern that trust have been amended, and in 1994 they were restated. But there is a trust fund or fund that goes back all the way to 1963, 59 years ago. The plan is something that was created in 2015, 52 years after the trust fund was created. The trust fund documents define the fund and the plan that existed at the time as distinct. The plan documents, relevant in this case that started in 2015, define the fund and the plan as distinct. And very interestingly, the ASO agreement, which has this arbitration provision that Cigna is relying on, the ASO agreement defines the plan and the fund as distinct. Now that shouldn't come as a surprise to us because ERISA says in Section 502 D.1, which is 29 U.S.C. 1332 D.1, an employee benefit plan may sue or be sued under this subchapter as an entity. And as the United States Supreme Court noted 11 years after ERISA was enacted in 1985, confirmed that a plan is a separate entity with the ability to sue and be sued. A plan is not a corporation. It's not a partnership. It's not a natural person. So it's not maybe a person under the law, but it is a legal entity under Congress' statute. How does your argument square with the fact that ERISA defines the employee welfare benefit plan as any plan, fund, or program? That definition seems to encompass both the trust fund and the program of benefits. Well, this fund, Your Honor, existed long before ERISA even existed. And so what ERISA does is, yes, it can be a fund, I suppose, if that's what you want to call it. It can be a plan, I suppose, if that's what you want to call it, or program. It is an arrangement for health care benefits. It is literally like the way we would use the word plan in our ordinary speech. Here's what we're going to do. If you have this kind of illness, this is the benefit to which you are entitled. And this is how that will be treated, and this is maybe how the treatment will be reimbursed to the provider. That plan, the small p plan, is what ERISA has said, whether you call it a plan or a fund or a program or whatever it is. It is itself an entity with the rights to be sued or to sue. It's distinct from every agreement, every document that's relevant in this case that's been part of the record. It is distinct from this particular fund because the trust fund that was created under the Taft-Hartley Act in 1963 does not exist to do a particular set of health care benefits. It does have authority to do that, to establish a plan that then provides health care benefits. It has authority to establish a plan that would provide pension benefits, and those are different types of plans. And that fund, which is managed by the eight-member board, can have multiple plans depending on what it wants to do with the trust fund corpus that is generated from contributions made by the employers and the employees. Hopefully this is somewhat responsive to your Honor's question. Well, now I've lost my train of thought, so I apologize, Your Honor. No, you've answered my question. In looking at the ERISA plan, that seems to encompass both the plan to provide the benefits as well as the fund that pays for the plan. I have a hard time seeing that the statutory definition of the ERISA plan treats the two as being separate legal entities. But even setting that aside, can you address the equitable estoppel issue that was reached by the district court? Sure. Well, the court assumed that the two were the same, which of course, as I've said, the governing documents very clearly state is not. But there are two requirements for equitable estoppel, and one is knowing exploitation, and the other is direct benefit. And the Comer case issued by this court is very helpful, I submit, in what I think answers the questions that we have before us today. But knowing exploitation means that you take advantage of the contract under which or in which the arbitration provision is found in seeking relief in the case. The plan here is not doing that. The plan is seeking to enforce its statutory rights under ERISA. Fiduciaries like Cigna owe fiduciary duties to the plan. Those duties were violated. The plan is seeking to enforce its rights under ERISA. So there is no exploitation of the ASO agreement. The plan doesn't rely on the ASO agreement. The plan has never referenced the ASO agreement in its complaint. It doesn't need the ASO agreement. There's nothing in the ASO agreement that the plan is relying on. It's not taking advantage of or exploiting that ASO agreement in any way. The second requirement is that there has to be a direct benefit to the plan, which we submit is not happening here either. We've obviously briefed this, but interesting, I think, worth noting in this short time is that the ASO agreement itself says that nobody besides Cigna and the fund are entitled to any benefits from the ASO agreement. But in any event, the plan does not benefit from the, certainly not directly from the ASO agreement, and doesn't benefit from it for purposes of this lawsuit because it doesn't need the ASO agreement. Well, as I understand it, counsel, under the principles of equitable estoppel, it's either the exploitation or resolution of the claim necessarily references the agreement. So in light of the board's allegation of excessive fees and improper behavior by Cigna, how does one even resolve those claims without reference to the agreement? You don't need the agreement because ERISA prohibits excessive fees, and that's a reason on this question that would be a function of the facts of the case. How do you determine whether the fees were excessive or not? You have to look at the ASO agreement. I respectfully disagree, Your Honor. You don't need to look at the ASO agreement to determine. In fact, if the ASO agreement permitted what was actually excessive fees, that would still be a violation of ERISA. That's what the cases say. That's actually what the text of ERISA says, that excessive fees are a breach of fiduciary duty. I'm sorry. You have to determine excessiveness by reference to something, right? It's excessive as opposed to what they agreed to. Correct. You would look at industry standard, or you would look at just the amount of the fee charged. Remember, some of these fees relate to cost containment, and so if there is a modest savings that's achieved by Cigna and they charge an excessive fee relative to the modesty of that saving, that would be an example of how you don't need the ASO agreement to know whether the fee is excessive. I know that I'm past my time, but I don't want to not answer a question from the panel. All right. You can reserve your remaining time. Okay. Thank you very much. Mr. Nicholson? Good morning, Your Honors. It's afternoon here in New York. May it please the Court, my name is Richard Nicholson. I'm a partner at McDermott, Will & Emery, and I represent Apelli Cigna. We heard a lot about why the plan and the fund were separate, but this lawsuit is a lot simpler than that. This lawsuit challenges Cigna's fees for services it provided to an ERISA health benefits plan the Board sponsored. Cigna provided those services and charged those fees pursuant to a contract called an Administrative Services Only, or ASO, agreement. The ASO agreement contained an arbitration provision. The Board signed the ASO agreement as planned fiduciary and planned sponsor, and the Board is the plaintiff that filed this lawsuit. On these facts, there can be no dispute that the arbitration provision applies to the Board's ERISA claims. Even the Board agreed with that before bringing this lawsuit, when it invoked the same dispute resolution provision for the same ERISA claims. Now, since Cigna filed its motion to compel arbitration, the Board has done an about-face and argues that the Board's ERISA claims cannot be arbitrated because the plan is not a signatory to the ASO agreement. That doesn't make sense. It's the Board's lawsuit. The plan itself could not have brought the ERISA claims at issue because the plan does not have standing to sue under ERISA 502A. There's binding Ninth Circuit case law on that point. The Board does, as a fiduciary. And in any event, the plan is clearly bound. The whole purpose of the agreement was to provide services to the plan. And while the plan itself could not have signed the ASO agreement, since, as counsel admitted, the plan is just a collection of benefits, and it can only act through its fiduciaries, which is the Board, the Board did sign the ASO agreement as planned sponsor. Otherwise, the Board is right. It would mean that a plan could benefit from a contract while avoiding any of its obligations because a plan itself can't sign a contract. That can't be right, and the District Court agreed. While there are a number of legal grounds supporting Cigna's motion to compel arbitration, the District Court held that even if the plan was not a signatory to the ASO agreement, and it was a separate entity, equitable estoppel applied to the plan, and the Board had to arbitrate its ERISA claims. I'd like to cover three points with your honors. First, I'd like to talk about why the District Court correctly held that equitable estoppel applied. Second, I'd like to explain why the District Court correctly held that the arbitration clause covers this dispute. And third, I'd like to address some of the arguments the Board has raised in the oral argument and in its papers. Turning to my first point, the District Court was correct that equitable estoppel applied. Under Arizona law, equitable estoppel applies in two scenarios. As Judge Nguyen pointed out, those two scenarios are the non-signatory knowingly exploits the benefits of the agreement, or the non-signatory seeks to enforce the terms of the agreement or its claims must be referenced by the agreement. As the District Court correctly held, either scenario applies here. I'll briefly go through each one. As to the first scenario, the plan knowingly benefited from the ASO agreement. The first two whereas clauses of the agreement say that the purpose of the agreement is to provide services to the plan. The plan is mentioned dozens of times in the ASO agreement. Services that Cigna provided to the plan were to review claims, adjudicate claims, pay claims, provide notice of benefit determination to plan members, and to provide cost containment services for members. The Board's counsel during oral argument below with the District Court admitted that the plan benefits from the agreement. That's 2 ER 30. There just can't be any dispute about this. Moreover, the District Court held that the Board's reliance on the ASO's dispute resolution provision prior to bringing this lawsuit is further evidence that equitable estoppel should apply here and that it was a knowing exploitation of the benefits of the agreement. Thus, as the District Court correctly found, the plan knowingly benefited from the ASO agreement. Now, counsel raised in his argument that the plan didn't knowingly benefit because the plan is just a collection of benefits for members. That proves Cigna's point while why this court should look to the Board, which is the plan fiduciary, and sign the ASO agreement. But regardless, under basic precepts of trust law, the knowledge of the trustee or the fiduciary is imputed to the trust here of the plan. So the Board's knowledge in entering this contract is imputed to the plan. Turning to the second, grounds for equitable estoppel, it's clear here the Board's breach of fiduciary duty claims under ERISA are going to turn on the ASO agreement. Cigna is not a named fiduciary under 29 U.S.C. 1102. The Board pled that in the complaint. The Board is the named fiduciary. Cigna is a functional fiduciary. Under 29 U.S.C. 1002.21a. As a functional fiduciary, Cigna can act as a fiduciary or not. So that's why the Supreme Court in Pogram held that the key issue is to determine whether or not the functional fiduciary was acting as a fiduciary with respect to the conduct issue. As this Court made crystal clear in Santameno, a functional fiduciary like Cigna does not act like a fiduciary when it's negotiating its compensation with a plan sponsor like the Board. So adding that up, there's two fundamental questions that the Board is going to need to answer that require the ASO agreement. One, whether Cigna was a fiduciary and the scope of its fiduciary responsibilities. And two, whether Cigna was acting as a fiduciary when it took the conducted issue. Therefore, as the District Court correctly found, equitable estoppel applies for this independent reason. And as Judge Warlaw pointed out, the Board makes much of the fact that it's talking about excessive fees. The only way you can tell if there was excessive fees is by looking at the contract to see what the fees were and what the Board as the plan fiduciary agreed to. Finally, for my second point, and for related reasons, this dispute clearly falls within the scope of the arbitration provision. The Ninth Circuit has found that rising from and relating to language is broad and far-reaching. The Mediterranean Enterprises case found that that language encompasses a breach of fiduciary duty claim like it does here. However, the Board has made much of the fact that the Board did not plead the existence of the ASO agreement in the complaint. It's basic law that a plaintiff may not plead around an arbitration provision, which is what the Board tried to do. Council mentioned the cost containment fees and the cost of containment fees. I think the way that the Board put it in their complaint was their so-called cost containment fees in the contract. It's clear that the contract underlays this dispute, the fees that Cigna charged, and the Board tried to plead around it, which is not proper, and the Court must look to the arbitration agreement. The Board also mischaracterizes the Third Circuit's decision in CardioNet. Other than the fact that that case involves Cigna, it has nothing to do with this dispute. It's different contracts and it's different claims. I think the most relevant claim there, though it wasn't relevant at all, was an assignee claim by a provider. The assignee was a beneficiary and the beneficiary hadn't signed an arbitration provision. That's not the case here. And now I'd just like to, with my remaining time, I'd like to talk about a couple of the arguments the Board raised, both an oral argument and its papers. The Board seems to believe that federal common law applies here. That's incorrect. It's Arizona State law under the Supreme Court's decision in Arthur Anderson. In its papers, the Board points to the SETI case. SETI deals with the New York Convention for International Arbitration, not the FAA. It's a different body of law. It doesn't apply here. Arthur Anderson does, and Arizona State law applies. The Board also seemed to suggest in its reply that the Benson case says that equitable estoppel can't apply under Arizona law. That's not true. The Benson case held that a statutory wage garnishment claim, which is not an issue in this lawsuit, could not be arbitrated as a matter of public policy in the state of Arizona. To be clear, though, the Benson case did point to the test that the District Court relied on and that I just described. It called for equitable estoppel and said that was the test under Arizona law. It also said that a few years earlier in the JTF aviation case, which the Arizona Supreme Court decided. And just for the avoidance of doubt, this court in Dorman held that ERISA claims are arbitrable. The Board's counsel also raised the Comer case just now during his argument. Comer was decided under federal common law, not Arizona law. It used a different test as the Board just laid out and as Judge Nguyen observed. However, even if Comer applied, which it doesn't, all Comer held was that equitable estoppel could not bind a beneficiary's ERISA claims when the beneficiary was a non-signatory to a contract between a plan sponsor and a service provider. Importantly, the Ninth Circuit and Comer recognized were the claims in that case brought by the trustee or the fiduciary, like the Board here, then the case would be sent to arbitration. So in fact, Comer supports Cigna's position. And the other cases that we've cited in our papers, like the GW Foods case, which is from the District Court in Missouri, which applied the same test as Arizona does. The Omni Home case and also the Raunches case all held that when it's a fiduciary bringing the breach of fiduciary duty claims against a service provider, and the fiduciary agrees to an arbitration provision, then the claims must be arbitrated. The Board cites no case where a fiduciary, where it signed an agreement on behalf of a plan, was absolved from litigating the claim given the arbitration provision. Just a few more points, Your Honors. The Board argues in its papers that agency law can't apply here, or trust law can't apply. It's a basic precept of trust law that a fiduciary or a trustee combined the trust or the plan via contract in the trust agreement. The Board is authorized to do so. It entered into the contract as plan sponsor and did so here. The Raunches case, which we cite in our papers, held exactly that in response to almost an identical argument by a fiduciary trying to avoid an arbitration provision with a service provider. Finally, Your Honors, or not finally, close to finally, apologies. The Board argues that the District Court in its briefs should not have relied on the Board's contradictory assertions in the number of letters it sent Cigna before filing this lawsuit. The Board doesn't really cite any authority for that proposition, but extrinsic evidence is clearly available to the District Court when deciding a motion to compel arbitration. And those letters are important because the Board interpreted the ASO agreement in those letters exactly the way that Cigna does here, which is that this dispute, this breach of fiduciary duty claims, are subject to the dispute resolution provision in the ASO agreement. Now, we heard a lot from counsel about the separation of the fund and the plan. In those letters, and I want to read what the Board's lawyers wrote because it's important, the Board said, and its lawyers said, that ERISA acquires a fiduciary to discharge their duties with respect to a plan. In this case, the fund. That is at 3 ER 303. Now, in those letters, as Judge Nguyen observed, the Board said the fund, in fact, was the plan. Other courts, including the local 159 case in the Ninth Circuit, have held that a fund and a plan cannot be distinct entities. The Ronchus case held the same. The Board talks about the fact that in the various documents, it points to the trust agreement and the plan, that the fund and the plan are defined separately, or I think said distinct. The Board doesn't really talk about what those definitions say, though. All of the agreements define the plan as merely a collection of benefits, and I think that's how the Board's counsel described them. It's a booklet that says, I'm going to have coverage for office visits, or I'll have out-of-service patients' coverage. It doesn't say in those documents that the plan is a separate legal entity, such that it needs to separately sign the ASO agreement or separately enter into a contract. In the Ronchus case, in fact, says a plan only can act through its fiduciaries, and that's consistent with ERISA Section 402, which talks about how the plan fiduciary, which is the Board, administers and manages the plan. The plan itself has no employees. It can't enter into a contract. It can only act through its fiduciary, which is here, the Board. The plan itself also makes clear that, as I think Judge Brunette observed, that the plan benefits need to be determined by looking at both the trust agreement, which establishes the fund, and the plan rules, which are the SPD booklet. And in the trust agreement... You're about running out of time, counsel. Do you want to sum up? Sure, absolutely, Your Honor. I think it's clear, Your Honors, that given the evidence in the record, the district court was correct to hold that this case should be sent to arbitration, and we humbly submit that the district court should be affirmed. Thank you. Thank you. All right. Mr. Renders, you have about three minutes left. Thank you, Your Honor. So the SIGNA itself defines the plan and the fund as separate entities. So SIGNA, when it entered into the ASO agreement with the fund, literally said that the fund and the plan are different things. So whether they can be the same thing, or whether whatever, these parties said they're different. Now, that's important. And actually, I want to illustrate how I think that's important with the issue of excessive fees. Excessive fees is only one of the issues that are raised in our complaint. But if the fund as a fiduciary, and SIGNA as a functional fiduciary, enter into an agreement that calls for fees that are excessive and not appropriate, even though the fund agrees to it, the plan has a claim against SIGNA for charging excessive fees. That's how it works all the time. Excessive fees are something that are charged under a contract that the fiduciary for the plan has entered into, but the plan ends up being the victim, and the plan has that claim. And the fact that the board, if the ASO agreement were breached, the fund could sue SIGNA on a breach of contract claim, and they'd be litigating in Arizona State Court, because that'd be a state court issue. Pure breach of contract. And the fund could do that, and the fund, in fact, did initiate the process to resolve its concerns with SIGNA. But the plan, as these parties themselves said was distinct, has its own rights under ERISA that are in no way impacted, defined, affected, or anything by the ASO agreement. And the plan gets to pursue those statutory rights. That's all this case is about, is a set of statutory rights as defined by ERISA. And that's all I have to say. Thank you very much. All right. Thank you, counsel. Board of Trustees of the IBEW versus SIGNA Health and Life Insurance Plan will be submitted. We've previously deferred submission on Wonder Works versus Dole Beverage Company. And this session of the court will be adjourned for today. Thank you. All rise.
judges: WARDLAW, NGUYEN, OWENS